UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-81385-CIV-MARRA

DAVID HADDEN,

     Plaintiff,

vs.

UNIVERSITY ACCOUNTING SERVICES,
RICHLAND STATE BANK and
TRANSWORLD SYSTEMS INC.

     Defendants.
_____/

## OPINION AND ORDER

This Cause is before the Court upon Defendant Richland's State Bank's Motion for Summary Judgment [DE 61] and Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment [DE 60].   Plaintiff, appearing pro se, filed a Response in Opposition to the Motion for Summary Judgment [DE 62] and a Response to the Statement of Undisputed Material Facts [DE 63].  Richland filed a Reply in Support [DE 64].  The Court has carefully considered the matter and is fully advised in the premises.

## I.  BACKGROUND

Plaintiff David Hadden initiated this action regarding his student loan.  Plaintiff's Amended Complaint brings claims against Defendant Richland State Bank ("Richland") under the Fair Trade Commission Act (Count I), the Fair Credit Reporting Act (Count III), and the Fair Debt Collection Practices Act (Counts V, VI, and VII).  [DE 29 at ¶¶ 111-16, 120-25, 126-30, 131-33, 135-41, 142-44, 145-48].   Plaintiff also brings common-law actions in breach of contract (Count VIII), negligence (Count IX), fraudulent misrepresentation (Count X), and intentional infliction of emotion distress (Count XI).  [*Id.* at ¶¶ 149-54, 155-62, 163-74, 175-80].

The Amended Complaint is also brought against University Accounting Services ("UAS") and Transworld Systems Inc.  This Order, however, only addresses Richland's Motion for Summary Judgment.

## II.   FACTS

On June 2, 2014, a student loan in the amount of $1,362.00 was applied for in Plaintiff's name from Richland State Bank.  [DE 60-1 at 7-12].

Plaintiff's affidavit states that he provided his financial information to Keiser University prior to being accepted, and he was assured that "the School would be able to find me financial-aid resources and/or scholarships without me being required to immediately begin repayment of my educational costs until after I had graduated from law school or stopped attending college at least haft-time."  [DE 63 at 9 ¶ 5].

Plaintiff's affidavit further states "[s]ubsequent to my Admission, however at no time was I required to be personally present with the School's financial-aid representative(s) while the school made educational loan requests to lenders, and who specifically completed the Mosaic Private Education Loan Application and Promissory Note' provided by Richland State Bank."  [*Id.* at 10 ¶ 8].  The affidavit states that the information provided to Keiser prior to his acceptance and enrollment was "the same information the school used to independently, and without my presence, electronically complete and sign all documents to lenders."  [*Id.* at ¶ 9].

On June 13, 2014, Richland notified Plaintiff it had approved the loan application and that he needed to sign a Truth-in-Lending Disclosure Statement.  [DE 60-1 at 3, ¶ 4; DE 60-1 at 15].

Plaintiff executed the Truth-in-Lending Act Statement on July 15, 2014, which reported a total loan amount of $1,417.71, reflecting $1,361.00 to be paid to Plaintiff's school, Keiser University, and the origination fee of $56.71.  [DE 60-1 at 3 ¶ 5; DE 60-1 at 19-20].  Richland

received Plaintiff's executed Truth-in-Lending Disclosure on July 16, 2014.  [*Id.* at 3, ¶ 5; DE 60-1 at 17].  Via letter, Richland notified Plaintiff of receipt of his signed Truth-in-Lending Disclosure Statement, returned a final copy, and informed him that the funds were scheduled to be disbursed to the school on July 24, 2014.  [*Id.* at 17].

Plaintiff's affidavit states that approximately two weeks prior to his graduation, the financial aid office informed him that his educational costs had not been paid in full and that he was told he needed to write a statement to the lender to request more money to cover the cost of his tuition.  [DE 63 at 11 ¶¶ 17-19].  On July 21, 2014, Richland received an email from Keiser University's financial aid office, forwarding the handwritten request from Plaintiff to increase the loan amount from $1,361.00 to $3,353.00.   [*Id.* at 3, ¶ 7, DE 60-1 at 22-23].

On July 24, 2014, Richland approved Plaintiff's revised application and advised him that Richland required a new signed Truth-in-Lending Disclosure Statement reflecting the updated amount.  [*Id.* at 25].

On August 21, 2014, Richland confirmed receipt of Plaintiff's updated Truth-in-Lending Disclosure Statement and notified Plaintiff that the requested funds were to be disbursed to Keiser on September 4, 2014.  [*Id.* at 27, 29-30].  The revised Truth-in-Lending Disclosure Statement showed a total loan amount of $3,492.71, consisting of $3,353.00 to be paid to Keiser and an origination fee of $139.71.  [*Id.* at 29-30].

On September 4, 2014, Richland disbursed Plaintiff's loan proceeds in the amount of $3,353.00 to Keiser University – Port St. Lucie.  [*Id.* at 32-33].

Richland then sold and assigned Plaintiff's loan to Everglades College, Inc. on September 11, 2014. [*Id.* at 35-38].

According to the affidavit of Pennie Lutz, President and CEO of Richland, Richland never had any further involvement in Plaintiff's loans; it never attempted to collect payment from Plaintiff on its behalf nor on behalf of anyone else. [*Id.* at 4, ¶¶13-14]. In response to Plaintiff's interrogatory, Ms. Lutz states that during the one-week time period from September 4, 2014 to September 11, 2014, Richland did not seek, and did not receive, payment of any amount, principal or interest, from Plaintiff. [DE 63 at 26]. The affidavit further states that Richland never reported any information regarding Plaintiff's loan to any credit bureau or credit reporting agency. [*Id.* at ¶ 15]. For Richland's purposes, that is where it contends the bank's involvement with Plaintiff ends.

However, Plaintiff alleges he was under the impression that "the loan approval also came with a full-deferment precluding Plaintiff from the obligation of making immediate payments while attending classes at-least half-time." [DE 29 at ¶ 62]. His affidavit states "[a]t no time since first attending Keiser University in September 2013 through July 27, 2014, the date of my graduation, did Richland State Bank, Keiser University or any other defendants' involving this action even hinted to me, of expected repayment terms on my educational loan(s)." [DE 63 at 10 ¶14].

Plaintiff's affidavit states that in June 2018, he discovered he was turned down for a student loan due to negative credit reporting from Everglades College and UAS, which caused him to investigate. [DE 63 at 17 ¶¶ 59-60].

Plaintiff's affidavit states "[n]otwithstanding, my unemployment status and credit fico score, '521', at the time should have automatically provided me a (24 months) deferment, or Interim Period; ( See Exhibit 6) Richland Bank instead, surreptitiously sold and transferred my loan to a loan servicer and debt collector, (Everglades College) Richland understood would not

seek my consent of repayment terms, but would unilaterally provide repayment terms that would be impossible, for me to perform, consequently, forfeiting and/or denying my right to decline the loan." [*Id.* at 14 ¶ 40].

Plaintiff's affidavit states that he has since learned that he was given three deferments; "a UAS representative stated to me my first deferment was provided on July 27, 2014. The second deferment was initiated on September 4, 2014. And the third deferment was provided on January 27, 2015. The deferments were independently authorized and provided by Richland in complicity with UAS and Everglades College, without my knowledge, or consent." [*Id.* at 14-15 ¶¶ 43-45].

Plaintiff's affidavit states none of the defendants "attempted to contact and inform him regarding the terms of the purported loan acceptance at his cellular number, physical and/or permanent address where he resided in Vero Beach" the address listed in the loan application, but instead deliberately continued to mail information to a P.O. Box, which he no longer had access to.  [*Id.* at 18 ¶ 72-73].

## III.   LEGAL STANDARD

The Court is to "liberally construe *pro se* briefs and the arguments contained in them." *Aysisayh v. Ward*, 460 F. App'x 902, 902 (11th Cir. 2012).  However, "despite the leniency we afford them, we are not permitted to serve as *de facto* counsel for *pro se* litigants." *Id.* at 903.

Summary judgment is appropriate where the Court is satisfied "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The court construes all evidence and reasonable inferences in the light most favorable to the nonmovant . . ." *Wilson v. Doss*, 552 F. App'x 970, 971 (11th Cir. 2014).

"When the nonmoving party has the burden of proof at trial, to prevail at summary judgment the moving party has the burden of either negating an essential element of the nonmoving

party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). "If the moving party shows an absence of evidence of a material fact, the burden of production shifts to the nonmoving party, who must identify evidence in the record or present 'additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Id.* (quoting *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116 (11th Cir. 1993)).

"[G]enuine disputes of facts are 'those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record.'" *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (quoting *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 919 (11th Cir. 1993)). "Summary judgment should be granted when, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *Nolen v. Boca Raton Cmty. Hosp., Inc.*, 373 F.3d 1151, 1154 (11th Cir. 2004).

## IV.   DISCUSSION

### A.  **Counts I, II, and III:**

Richland moves for summary judgment on Counts I, II, and III arguing that there is no private cause of action under the Federal Trade Commission Act ("FTC Act") or under 15 U.S.C. § 1681s-2(a) of the Fair Credit Reporting Act ("FCRA"). [DE 61 at 3-4]. Richland notes that it is unclear whether Count II states a claim against Richland, but to the extent that it does, asks the Court to grant summary judgment in Richland's favor. [*Id.* at 4 n.2].

Plaintiff concedes that summary judgment may be appropriate for his claims under the FTC Act and FCRA against Richland in Counts I, II, and III. [DE 62 at 4].

Count I alleges Richland violated section 5(a) of the FTC Act, codified at 15 U.S.C. § 45(a).  There is no private cause of action under the FTC Act.  *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1174 n.5 (11th Cir. 1985) ("consumers were given a private right of action to enforce the provisions of the FDCPA against debt collectors, 15 U.S.C.A. § 1692k, a right which does not exist under the FTC Act.") (citing *Holloway v. Bristol-Myers Corp.,* 485 F.2d 986 (D.C.Cir.1973) (no implied private right of action under FTC Act)).

In Counts II and III, Plaintiff alleges violations of sections 623(a)(1)(A) and 623(a)(7) of the Federal Credit Reporting Act, which are codified at 15 U.S.C. § 1681s-2(a)(1)(A) and 15 U.S.C. § 1681s-2(a)(7).   There is no private cause of action under section 623(a) of the FCRA. *See Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) ("This provision, among other things, prohibits knowingly furnishing inaccurate information to a consumer reporting agency and mandates correcting any inaccurate information that has been furnished. 15 U.S.C. § 1681s–2(a)(1). Another section of the statute, however, provides that subsection (a) 'shall be enforced exclusively' by federal and state authorities. 15 U.S.C. § 1681s–2(d)").

Accordingly, the Court finds summary judgment in favor of Richland on these three counts is appropriate.

**B. Counts V and VI:**

Plaintiff alleges multiple violations of the Fair Debt Collection Practices Act ("FDCPA"). In Count V, Plaintiff alleges violations of 15 U.S.C. § 1692b(3) and 15 U.S.C. § 1692e(10).  [DE 29 at ¶¶ 135-41].  In Count VI, Plaintiff alleges violations of 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692e(8), and 15 U.S.C. 1692(e)(10).  [*Id.* at ¶¶ 142-44].

Richland contends that the claims brought under the FDCPA fail because Richland is not a debt collector as defined by the FDCPA.  [DE 61 at 4-5].

Plaintiff responds that he has alleged Richland worked in concert with Keiser University d/b/a Everglades College, University Accounting Services, and Transworld Systems, Inc. to initiate the loan debt and repayment terms without informing Plaintiff of the debt and that Defendants falsely began reporting the loan as a loan debt.  [DE 62 at 5].   Plaintiff disputes that Richland owned the loan for a week before selling the loan.  [*Id.*].

The provisions of the FDCPA that Plaintiff invokes apply only to debt collectors.  *See Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015) ("There is no dispute that § 1692e applies only to debt collectors."); 15 U.S.C. § 1692b ("[a]ny **debt collector** communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall . . .") (emphasis added).

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  In contrast, the FDCPA defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  15 U.S.C. § 1692a(4).

Plaintiff fails to present any evidence that would raise a genuine issue of material fact on the question of whether Richland is a debt collector as defined by the FDCPA.  Richland offers evidence that it was the original creditor for the loan before disbursing the money on September 4, 2014 and then selling and assigning the loan to Everglades College on September 11, 2014. [DE 60-1 at 32-33; 37-38].

Plaintiff offers nothing to support his unfounded allegations that Richland was working in concert with the other Defendants and nothing to establish that Richland attempted to collect debts due another.  In fact, the Amended Complaint only alleges that "University Accounting Services, L.L.C. and Transworld System s Inc are 'debt collectors' as defined in section 80346) of the FDCPA 15 U.S.C. § 1692a(6)" and makes no similar factual allegations about Richland.  [DE 29 at ¶ 39].  While Plaintiff disputes the length of time that Richland owned the loan, he does nothing to rebut the evidence in the record.  He also does not dispute that Richland never even attempted to collect on the debt owed to Richland.  "For factual issues to be considered genuine, they must have a real basis in the record.'" *Mann*, 588 F.3d at 1303.

Because Richland has presented record evidence to demonstrate that it is not a debt collector as defined by the FDCPA, and since Plaintiff has failed to present any evidence that raises a genuine issue of material fact on that question, the Court grants summary judgment in favor of Richland.

## C.  **Count VIII:**

In Count VIII, Plaintiff asserts a claim of breach of contract against Richland.  [DE 29 at ¶¶ 149-154].  Plaintiff alleges Richland "had a duty to clearly inform Plaintiff at the time of commencement whether Plaintiff deferment request was denied and whether Plaintiff would be required to immediately begin repayment of his approved loan when defendant had known Plaintiff was not employed and/or was unable to immediately repay the loan" and that Richland "had a duty to deny Plaintiff a monetary contractual agreement defendant knew was a fraudulent misrepresentation and impossible for Plaintiff to fulfill."  [*Id.* at ¶¶ 150-51].  Plaintiff alleges Richland further breached its duty through "Defendant's transference of Plaintiffs account to University Accounting Services Inc., when Defendant had known or should have known

Defendant University Accounting Services would not be fair in honoring Plaintiff s approved deferment and demand immediate payment at a time when Plaintiff was unemployed." [*Id.* at ¶ 152]. The Amended Complaint continues Richland "breached its duty to David Hadden by fraudulently representing and/or misrepresenting Plaintiff s account information, and repayment on Plaintiff's approved loan" and "[a]s a result and proximate cause of Defendant's breach of contract Plaintiff has suffered loss of income, enjoyment of life, personal pain and emotional distress." [*Id.* at ¶¶ 153-54].

Richland argues it is entitled to summary judgment on the breach of contract claim because "[t]here is no allegation in Plaintiff's Amended Complaint that Richland breached any terms of the Loan Application and Promissory Note." [DE 61 at 5]. Richland asserts that the Amended Complaint "conjures various duties out of thin air," and that because Richland complied with the terms of the Loan Application and Promissory Note, and Plaintiff cannot identify a provision of the contract that Richland breached, summary judgment should be entered for Richland. [*Id.* at 6].

Plaintiff responds that "[t]here was no legal contract involving the instant action" and that therefore a genuine issue exists as to whether the parties had a legal contract. [DE 62 at 7]. Plaintiff insists that "because the repayment terms were impossible for Plaintiff to perform and/or carry out involving defendants' alleged scheme, this court should accept Plaintiff's argument Defendant, Richland State Bank had no intention to carry out a legal contract." [*Id.* at 6].

Richland has presented evidence of a legal contract in the form of the Loan Application and the Promissory Note, as well as the confirmatory correspondence. [DE 60-1 at 7-13, 17, 19-20, 25, 27, 29-30]. The burden now shifts to Plaintiff. *See McGee*, 719 F.3d at 1242 ("If the moving party shows an absence of evidence of a material fact, the burden of production shifts to the nonmoving party, who must identify evidence in the record or present 'additional evidence

sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'") (quoting *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116 (11th Cir. 1993)).

Here, Plaintiff has offered no evidence to refute the evidence that the Loan Application and Promissory Notes are valid. He also does not raise a factual dispute regarding the documents. Instead, he asserts that he believes the Court should not enforce the contract, and alternatively, that he was entitled to deferment per the terms of the loan agreement he now argues is invalid.

Plaintiff's arguments do not preclude granting summary judgment. "For factual issues to be considered genuine, they must have a real basis in the record.'" *Mann*, 588 F.3d at 1303. Plaintiff has failed to raise a genuine issue of material fact. Moreover, Plaintiff's Amended Complaint fails to point to a provision of the contract that constitutes an alleged breach of contract on the part of Richland. "Summary judgment should be granted when, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case," and here Plaintiff fails to establish how Richland breached the contract. *Nolen*, 373 F.3d at 1154. Accordingly, the Court grants summary judgment on Count VIII in favor of Richland.

## D. Count IX

In Count IX, Plaintiff alleges a claim of negligence. [DE 29 at ¶¶ 155-62]. The Amended Complaint alleges "[e]ach Defendant breached their duty in numerous instances . . . including but not limited to circumstances where Richland State Bank failed to adequately quantify David Hadden's deferment approval date, and/or request for deferment Defendant knew had been requested prior to Defendant's approval of David Hadden's loan and/or disbursement of funds involving this action." [DE 29 at ¶ 157]. Plaintiff also alleges Richland breached its duties by "fraudulent representing and/or misrepresenting David Hadden's deferment request, deferment approval, and/or disproval on Plaintiff s original loan." [*Id.* at ¶ 158]. Additionally, Plaintiff

alleges Richland breached its duty by "arbitrarily misrepresenting David Hadden's dates of deferment, including Richland State Bank failing to contact Plaintiff within a reasonable time as required by law when Defendants transferred David Hadden's account information to University Accounting Services." [*Id.* at ¶ 159].

Richland argues that the negligence claim actually arises out of the Loan Application and Promissory Note and nothing else, and therefore under the independent tort doctrine, Plaintiff is barred from bringing the tort that is based in breach of contract. [DE 61 at 6-7]. Richland insists that none of the negligence allegations consist of additional conduct beyond the bounds of the contract, and summary judgment should be granted.

In response, Plaintiff argues, for the first time, that "the record is clear there was no legal contract." [DE 62 at 7-8]. He contends that the independent tort doctrine is therefore inapplicable. [*Id.*]. Plaintiff asserts that "Richland fraudulently and without Plaintiff s knowledge or consent approving a loan in his name, then shortly afterwards negotiating with Service providers and debt collectors to purchase and Service the loan without informing him of the sale and immediate repayment terms while he was unemployed at the time, is shameful and when the bank received a letter he written at the behest of the School he attended is fraudulent . . . ." [*Id.* at 8].

As Plaintiff notes, Florida has receded from the economic loss rule, which has been described as "a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses," except for in the products liability context.[1]  *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 401 (Fla. 2013).  Nevertheless, the Eleventh Circuit has explained that "*Tiara* may, however,

---

[1] *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011) ("As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case Florida, alongside federal procedural law.").

have left intact a separate hurdle, namely that 'a party still must demonstrate that ... the tort is independent of any breach of contract claim.'" *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014) (quoting *Tiara*, 110 So. 3d at 408 (Pariente, J., concurring)).  The Eleventh Circuit elaborated "[w]hile the exact contours of this possible separate limitation, as applied post-*Tiara,* are still unclear, the standard appears to be that 'where a breach of contract is combined with some other conduct amounting to an independent tort, the breach can be considered negligence.'" *Id.* (quoting *U.S. Fire Ins. Co. v. ADT Sec. Servs., Inc.,* 134 So.3d 477, 480, 2013 WL 5225374, at *2 (Fla. 2d DCA Sept. 18, 2013)); *see also King v. Bencie*, 752 F. App'x 881, 883 (11th Cir. 2018) ("Florida law, however, is still 'somewhat unsettled in this area.'" (quoting *Lamm,* 749 F.3d at 947).

The Court agrees that the independent tort doctrine applies.  *See Burdick v. Bank of Am., N.A.*, 99 F. Supp. 3d 1372, 1378 (S.D. Fla. 2015) (dismissing negligence claim regarding force-placement of insurance "because they should have been brought in contract rather than in Negligence" and "Plaintiff has not alleged that Defendants' purported negligence is 'independent of any breach of contract claim' as Florida law requires") (quoting *Tiara*, 110 So. 3d at 408 (Pariente, J., concurring)).  Here, Plaintiff does not allege conduct aside from activity regarding the promissory note and loan.

Moreover, the conduct alleged to be a breach of the duty owed to Plaintiff was pursuant to terms outlined in the contract and cannot sustain a claim even if the duty did not "stem from a contractual relationship between the parties." *Id.*; *see also Rousseau v. Green Tree Servicing, LLC*, No. 1462568CIVBLOOMVALLE, 2015 WL 11197797, at *3 (S.D. Fla. May 7, 2015) ("Here, as in *Burdick*, Plaintiff has assented to the employment of a new servicer governed by the same duties set forth in the original mortgage contract.").  Plaintiff mistakenly calls the interim period the

deferment period, and under the terms of the loan and application, there is no entitlement to what Plaintiff considers "deferment." [DE 60-1 at 9-10]. Additionally, the terms provide that Richland "may assign this Note at any time," and Plaintiff cites to no requirement that Richland notify Plaintiff of such a change. [*Id.* at 10].

As for Plaintiff's new argument that there was no valid contract, the only allegation in the Amended Complaint that relates is where Plaintiff alleges "Richland State Bank had known at the time of Plaintiffs loan approval Defendants' had no intentions to create a legal contract; consequently, providing a false misrepresentation of Plaintiffs loan approval and deferment that was intended to induce Plaintiff to accept the loan." [DE 29 at ¶ 22]. Plaintiff's argument fails. Plaintiff offers no support for the proposition that Defendants did not intend to enter into a legal contract with Plaintiff. That notion is plainly refuted by Richland's evidence: the loan application, the promissory note, the Truth-in-Lending statements, and the disbursement of the funds. Plaintiff only points to his own Requests for Admission. [DE 62 at 14-16 ¶¶ 5, 6, 9-10, 25, 29]. This fails to refute the overwhelming evidence that this was a valid contract.

For the reasons stated above, the Court finds that summary judgment in Richland's favor is appropriate on Plaintiff's negligence claim.

### E.  Count X

In Count X, Plaintiff alleges fraudulent misrepresentation. [DE 29 at ¶¶ 163-74]. Plaintiff asserts that "Richland State Bank, and University Accounting Services represented and/or misrepresented Plaintiff David Hadden's deferment approval of his loan disbursed on September 4, 2014, including the length of time of the deferment." [*Id.* at ¶ 164]. The Amended Complaint alleges Richland and the other Defendants fraudulently "misrepresent and collect a debt against Hadden, and falsely report the information to the credit reporting agency." [*Id.* at ¶ 173].

14

Richland moves for summary judgment on this claim arguing that there is no false representation. Again, Richland indicates what Plaintiff calls "deferment" is "defined under the terms of the loan as the 'interim period'" which required payments of either interest or interest and principal. [DE 61 at 7-8]. Richland asserts that the payment terms were clearly detailed in the loan and "no representation as to any deferment was made by Richland outside of the terms of the Loan Application and Promissory note." [*Id.* at 8].

Plaintiff counters with new allegations, not previously raised in the Amended Complaint. He now argues "[t]he issue is not so much Defendant, Richland State Bank misrepresenting details regarding the deferment of his loan, but, that Plaintiff was not; first, informed about a loan amount of $3,353.00 and defendant's expectations. Second, Plaintiff was not informed about the loan being approved. Then third, Plaintiff was denied his right to decline the loan." [DE 62 at 9].

Under Florida law, "there are four elements of fraudulent misrepresentation: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation.'" *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (quoting *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)).

Addressing the allegations made in the Amended Complaint, in pertinent part, Plaintiff alleges that Richland misrepresented Plaintiff's deferment approval, including the length of time of the deferment, and that Richland fraudulently misrepresented and collected a debt against him and falsely reported the information to the credit reporting agency. [DE 29 at ¶¶ 164-173]. Plaintiff also alleges "University Accounting Services, and Richland State Bank's representation and/or misrepresentations of David Hadden's deferment request and/or approval dates on the dates alleged in this suit, including the dates of July 27, 2014, September 4, 2014 and January 27, 2015

was known to be false or made recklessly without knowledge of its truth at the time it was made." [*Id.* at ¶ 166].

Richland reiterates that "[w]hat Plaintiff describes as 'deferment' is what is defined under the terms of the loan as the 'interim period,'" and points to the terms of the loan, which defines the interim period as "the period beginning on the first Disbursement date and ending on the date that is six months after the Borrower graduates or ceases enrollment or at least a half-time basis at the school, up to a maximum of 54 months." [DE 61 at 7-8]; [DE 60-1 at 9-10]. The Court agrees that the terms are expressly provided in the loan. Accordingly, under the allegations of the Amended Complaint, Plaintiff fails to establish even the first element of fraudulent misrepresentation—a false statement concerning a material fact; rather, it appears Plaintiff abandoned that argument. [DE 62 at 9].

The Court now turns to the argument asserted in Plaintiff's response, that Richland failed to inform him of the loan amount of $3,353.00 and the related expectations, the loan being approved, and that Plaintiff was denied his right to decline the loan. Plaintiff insists, without evidence, that "[n]ot only was Plaintiff not given the option to decline receiving the loan, and/or amount (3,353.00) he knew nothing about; but Plaintiff was not provided any options to defer the $3,353.00 repayment terms, notwithstanding, his unemployment status and/or annual income ($0)." [DE 62 at 9].

Plaintiff's assertions are refuted by evidence in the record. First, Plaintiff admits that he requested the increased loan amount of $3,353.00 and both parties offer Plaintiff's handwritten note as evidence. [DE 63 at 31; 11]. Second, Plaintiff admits to receiving email correspondence from Richland pertaining to his loan. [*Id.* at 11 ¶ 22]. Richland points to the Richland email to Plaintiff on July 24, 2014 informing him that his new loan application had been approved. [DE

64-1 at 5, 2-3 ¶ 3].  Richland also offers the July 24, 2014 letter informing Plaintiff that Richland had received his student loan application, which had been approved.  Notably, the letter cautions in bold "[p]lease be aware we must receive a copy of your signed Truth-in-Lending Disclosure Statement (Approval) by the date of acceptance noted in your statement or your application will be considered withdrawn."  [DE 60-1 at 25].  Richland also points to its emails and letters dated August 22, 2014 to Plaintiff confirming it received his signed and executed Truth-in-Lending Statement and that the funds were scheduled for disbursement on September 4, 2014.  [DE 60-1 at 27; DE 64-1 at 7].

The Truth-in-Lending Disclosure Statement that Plaintiff executed fully rebuts Plaintiff's claim that he was not told that he could decline the loan or the repayment terms.  [DE 60-1 at 29-30].  It discloses: the total loan amount; the interest rate; the monthly payments; that Keiser University will receive the funds; that Richland is the creditor; and potential federal loan alternatives. [*Id.*].  The statement also notified Plaintiff that the loan offer was good until August 30, 2014.  [*Id.*].

The Court therefore finds that even considering the allegations in Plaintiff's response, Plaintiff fails to establish the first element of fraudulent misrepresentation—a false statement concerning a material fact—and there is no genuine dispute as to a material fact.

Accordingly, summary judgment in favor of Richland is granted on this claim.

## F.  Count XI

Finally, Plaintiff asserts a claim of intentional infliction of emotional distress ("IIED") against Richland.[2]  [DE 29 at ¶ 175-80].  Plaintiff alleges that Richland's "fraudulent complicity and failure to inform Plaintiff David Hadden of Defendant University Accounting Services

---

[2] The Amended Complaint labels this as a second Count X; the Court will refer to this claim as Count XI.

involvement in this action is extreme or outrageous and in which largely contributed to the instant action being in turmoil, and causing Plaintiff great distress." [DE 29 at ¶ 177]. The Amended Complaint further alleges that Richland's "intentional misrepresentation of Defendants' knowledge of Plaintiff s deferment approval and/or request for deferment prior to September 4, 2014 is extreme and/or outrageous in this circumstance, including University Accounting Services and Transworld Systems Inc., false statements of Plaintiff s owing an illegitimate debt to a creditor it had known or should have known to be false." [*Id.* at ¶ 179].

Richland moves for summary judgment arguing that Plaintiff's allegations do not meet the beyond the bounds of decency standard, which is an element of the tort under Florida law. [DE 61 at 8-9].

Plaintiff responds that Florida law recognizes IIED where a company abuses its power or position of trust for financial gain. [DE 62 at 10-13]. Plaintiff contends that he was "deliberately defrauded involving a College Admissions scam" and that "Richland has admitted 'lending to unemployed student applicants is inherent to the student loan industry and the student applicant's ability to repay the loan is not considered at the time an application is submitted.'" [*Id.* at 12].

In Florida, the elements of intentional infliction of emotional distress are:

(1) the defendant's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized society; (3) the conduct caused emotional distress; and (4) the emotional distress was severe.

*Knezevich v. Carter*, 805 F. App'x 717, 725 (11th Cir. 2020) (citing *LeGrande v. Emmanuel*, 889 So. 2d 991, 994 (Fla. Dist. Ct. App. 2004)). "The issue of whether the activities of the defendant rise to the level of being extreme and outrageous is a legal question for the court to decide as a matter of law." *Id.* (citing *Baker v. Fla. Nat'l Bank*, 559 So. 2d 284, 287 (Fla. Dist. Ct. App.

1990)). "Regarding the second prong, even tortious or criminal intent, or intent to inflict emotional distress, standing alone, is not enough." *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015) "Florida courts have found ''[l]iability ... only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985) (internal citation omitted)). "A plaintiff alleging IIED faces an extremely high burden, as Florida courts have repeatedly found a wide spectrum of behavior insufficiently 'outrageous.'" *Brown v. Royal Caribbean Cruises, Ltd.*, No. 16-24209-CIV, 2017 WL 3773709, at *3 (S.D. Fla. Mar. 17, 2017).

Here, Plaintiff has failed to establish the elements to prove his IIED claim.  Plaintiff cites to two cases for the proposition that the standard of outrageousness may change if the defendant holds a position of power over a plaintiff.  *See Dominguez v. Equitable Life Assur. Soc. of U.S.*, 438 So. 2d 58 (Fla. Dist. Ct. App. 1983), *approved sub nom. Crawford & Co. v. Dominguez*, 467 So. 2d 281 (Fla. 1985); *Miller v. Mut. of Omaha Ins. Co.*, 235 So. 2d 33, 35 (Fla. Dist. Ct. App. 1970).  These cases are distinguishable.

The Eleventh Circuit, considering a plaintiff's invocation of *Dominguez*, explained that "involved a defendant in a position of power over a plaintiff who was, due to the circumstances, peculiarly susceptible to emotional distress." *Lopez v. Target Corp.*, 676 F.3d 1230, 1237 n.5 (11th Cir. 2012).  In *Dominguez*, the appellate court considered how the defendants were "aware of the plaintiff's disabilities and thus his susceptibility to emotional distress when they acted" before holding "[t]his combination of the unjustified assertion of power by one party, and impotence of the other, would, we think, be viewed by a civilized community as outrageous and

not as an indignity, annoyance or petty oppression for which the law affords no relief." *Dominguez*, 438 So. 2d at 62.

Similarly, in *Miller*, the plaintiff was subjected to a greater abuse of power by defendant. *Miller*, 235 So. 2d at 34-35.  There, plaintiff testified that following her discharge from the hospital, the insurance company refused to pay, and she was visited at home by an insurance agent who taunted and threatened her and wrongfully took plaintiff's insurance policy from her home.  *Id.* On appeal from a judgment for the defendants notwithstanding the jury verdict, the appellate court found that it could not "correctly be held that, in view of the foregoing evidence, the plaintiffs' side of the case 'is essentially devoid of probative evidence.'"  *Id.* at 35.

In contrast to *Dominguez*, Plaintiff was not in a similar physical or emotionally vulnerable situation, nor was it a situation where the defendant "aware of the plaintiff's disabilities and thus his susceptibility to emotional distress when they acted."  *Dominguez*, 438 So. 2d at 62. Additionally, the Court finds that the allegations made against Richland, even taken as true, fail to rise to the level of outrageousness as what transpired in *Miller*.[3]  Plaintiff mainly alleges that Richland's "fraudulent complicity and failure to inform Plaintiff David Hadden of Defendant University Accounting Services involvement in this action is extreme or outrageous" and that Richland misrepresented its knowledge of a deferment approval.  [DE 29 at ¶¶ 177, 179].

Accordingly, the Court grants summary judgment in Richland's favor as the alleged failure to inform Plaintiff of the loan being sold and serviced by University Accounting Services and alleged misrepresentation of the deferment fail to satisfy the second element of the tort as a matter of law.  *See e.g. Robb v. Rahi Real Estate Holdings LLC*, No. 10-81474-CIV, 2011 WL 2149941, at *3 (S.D. Fla. May 23, 2011) (holding that where alleged conduct in foreclosure action merely

---

[3] The Court also notes that the treatment of the tort under Florida law, particularly the second element of outrageousness, has changed dramatically since *Miller* was decided in 1970.

consisted of sending pre-suit letters and filing a lawsuit that "[s]uch actions do not amount to outrageous and extreme conduct that goes beyond the bounds of decency, nor are the actions atrocious or utterly intolerable in a civilized community.").

### G. Leave to Amend

Plaintiff, in his Response, requests that the Court grant him leave to amend. [DE 62 at 13].

Richland objects to the request, arguing that it would result in substantial prejudice to Richland, including additional attorneys' fees and costs defending against the Amended Complaint and discovery requests. [DE 64 at 5]. Richland also argues that allowing Plaintiff to amend the Amended Complaint would be futile.

"In general, a *pro se* litigant must be given an opportunity to amend his complaint." *Ferrier v. Atria*, 728 F. App'x 958, 962 (11th Cir. 2018). However, "[a] district court need not allow amendment, however, where it would be futile." *Id.* "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

The Court finds that leave to amend would be futile because his claims are either not cognizable or even if properly pled, Richland would be entitled to summary judgment. *See Hunt v. Nationstar Mortg., LLC*, 684 F. App'x 938, 944 (11th Cir. 2017) ("Though Hunt would generally be entitled to at least one opportunity to amend his complaint, any amendment here would be futile because his claims are either time barred or not cognizable.").

The Court notes that this Opinion and Order does not impact the other Defendants.

### V.   CONCLUSION

Based upon the foregoing, it is hereby **ORDERED AND ADJUDGED** that:

1. Richland's Motion for Summary Judgment [**DE 61**] is **GRANTED**.

2. The Court will enter judgment for Defendants by separate order.

       **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida,

this 28th day of August, 2020.

KENNETH A. MARRA
United States District Judge