UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-81385-CIV-MARRA

DAVID HADDEN,

       Plaintiff,

vs.

UNIVERSITY ACCOUNTING SERVICES,
TRANSWORLD SYSTEMS, INC., AND
EVERGLADES COLLEGE d/b/a KEISER
UNIVERSITY,

       Defendants.
_____/

## ORDER AND OPINION COMPELLING ARBITRATION

**THIS CAUSE** is before the Court upon Defendant Everglades College d/b/a

Keiser University's Motion to Dismiss and Compel Arbitration [DE 79], Defendant

Everglades College d/b/a Keiser University's Motion to Extend Deadlines in Scheduling

Order [DE 91], and Defendant Everglades College d/b/a Keiser University's Request

for Judicial Notice of Plaintiff's Second Amended Complaint [DE 98].   The Court has

carefully considered the motions, responses, and replies, the entire Court file, and

the presentation of the parties at an evidentiary hearing held on December 21, 2020.

## Introduction

Plaintiff, David Hadden ("Hadden"), proceeding *pro se*, initiated this action

regarding the terms of and collection efforts made with respect to his student loans.

Plaintiff's Second Amended Complaint (DE 73) ("SAC") brings claims against

Defendant Everglades College d/b/a Keiser University ("Keiser") under the Fair Credit

Reporting Act (Count I) and the Fair Debt Collection Practices Act (Counts II and III). Hadden also brings common-law actions for Negligence (Count IV), Gross Negligence (Count V), Breach of Fiduciary Duty (Count VI), Fraudulent Misrepresentation (Count VII), and Intentional Infliction of Emotional Distress (Count VIII).[1]   The SAC is also brought against University Accounting Services and Transworld Systems Inc., loan servicers and collectors.

**Background**

In January 2013, Hadden decided to move forward in fulfilling his dream of becoming a lawyer.   He needed to go back to college, after more than a 12-year absence, obtain his Bachelor of Arts Degree, and then continue on to law school. SAC ¶ 5.   Hadden spoke with a Keiser recruiter, and then with a Keiser Admission Counselor.   He was assured by Keiser staff that he could return to college and graduate without being required to repay any of his tuition costs until after he had graduated from law school.   SAC ¶ 8.   "Plaintiff was assured and told by [Keiser] employees he had nothing to worry about and he would not have to pay any immediate costs for his courses while he attended classes full time, . . . unless he stopped attending school at least half time, which was Plaintiff's biggest concern at the time, because he was unemployed."   SAC ¶ 9-11.   Hadden relied on these statements and in September 2013, Hadden applied and was accepted to attend

---

1 DE 73 at ¶¶ 118, 123, 128, 124-126 (the Second Amended Complaint contains a number error beginning when paragraph 128 is followed by paragraph 121), 132-134, 142-143 (the Second Amended Complaint contains two paragraphs labeled 142 in the negligence section), 146, 152.

Keiser for the fall semester.    SAC ¶ 13.

Hadden alleges that at no time while attending classes at Keiser was he informed by the Financial Aid office regarding concerns of Hadden's costs of his education.    SAC at ¶ 18.    Hadden claims that on July 21, 2014, a week prior to graduation, the Financial Aid office sent an employee to his classroom to request he be excused from class to come to the financial aid office.    Once at the Financial Aid office, he was provided a pen and paper and told by Keiser's staff to write a statement to the lender and request more money.    SAC at ¶¶ 20-22.

Hadden alleges that at no time was he informed about a Promissory Note or Truth-in-Lending Statement in which the funds Hadden was requesting in the letter would require him to begin immediate repayment.    SAC at ¶ 23.    Hadden claims that he had been attending Keiser for nearly a year, and he had been assured prior to enrolling that he would not have to pay his educational costs for attending Keiser until after he had graduated from law school.    SAC at ¶ 24.    Hadden alleges Keiser deliberately induced him to represent to the lender, Richland State Bank, that he was consensually requesting a tuition loan in the amount of $3,353.00 to be paid to Keiser, the subject amount and repayment terms of which Hadden was unaware and to which he did not consent.    SAC ¶¶ 25-26.    "[F]or whatever reason, the Bank did not include the $3,353.00 requested in defendant's letter for more money to be deferred.    To this extent, Plaintiff himself, never had an opportunity to decline the loan, and/or specifically request a deferment to pay the loan because Plaintiff did not

know he was being induced at this time to begin immediate repayment on the monies

he was requesting in the letter.   Thus, he was never informed, or provided the

Promissory Note Application to decline the loan, or even to request a deferment."

SAC ¶ 33; see also ¶¶ 30-31.   Then the debt was sold to Defendant University

Accounting Services L.L.C. ("UAS").   SAC at ¶ 31.

Hadden alleges that Keiser and UAS reported false information to a credit

reporting agency.   SAC at ¶¶ 53-54, 57, 62-63.   Hadden spoke with UAS and learned

that his case had been transferred to Defendant Transworld Systems Inc. on

September 9, 2015.   SAC at ¶¶ 67, 69, 74.   Hadden alleges UAS and Transworld,

"working in concert with [Keiser,] were falsely representing an illegitimate debt it

had known or should have known David Hadden did not legally owe."   SAC at ¶ 68.

Hadden alleges that "at no time prior to [September 9, 2015, did] Defendants . . .

ma[k]e any reasonably good faith efforts to contact Plaintiff to dispute or pay the

purported debt Defendants claim Plaintiff owed, though Defendants had known

Plaintiff's contact information, including emergency contact numbers."   SAC at ¶ 77.

Hadden claims that due to Defendants' complicity and false and inaccurate debt

collection, he was forced to cancel his Law School Admissions Test, foreclosing his

opportunity to attend law school in 2018.   SAC at ¶ 94.

Hadden claims that in February 2020, he received a debt collection letter from

Keiser dated December 24, 2019, requesting Hadden pay a debt in full of $6,066.48.

SAC at ¶ 95.   Hadden alleges that Keiser and UAS made negative reporting against his

credit without first informing him within 30 days of reporting the negative information, and that Hadden had never before been contacted by Keiser regarding his educational debt.   SAC at ¶¶ 57, 99-100.

Keiser moves to have this matter dismissed and an order compelling Hadden to resolve this dispute through arbitration because Hadden "acknowledged and accepted the terms of the Enrollment Policies and Procedures which included an arbitration clause for any disputes between the parties."   DE 79 at 1.   Hadden opposes the motion, which arguments are addressed below.

**Standard of Review**

Pursuant to the Federal Arbitration Act ("FAA"), written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."   9 U.S.C. § 2.   One of the purposes of the FAA is to "ensure judicial enforcement of privately made agreements to arbitrate."   *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985) ("*Byrd*").   The Supreme Court has articulated a strong federal policy supporting arbitration agreements.   *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also AT&T Mobility, LLC v. Concepcion,* 563 U.S. 333, 339 (2011) ("*Concepcion*") (the Federal Arbitration Act reflects a "liberal federal policy favoring arbitration").   As such, arbitration agreements must be "rigorously enforce[d]" by the courts.   *Byrd*, 470 U.S. at 221; *Concepcion*, 563 U.S. at 339 (2011) (citations omitted) ("courts [ ] place arbitration agreements on an equal footing with other contracts and enforce them according to their terms"); *Walthour*

*v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329-30 (11th Cir. 2014) ("courts must rigorously enforce arbitration agreements according to their terms.").

Because arbitration is a matter of contract, however, the FAA's strong pro-arbitration policy only applies to disputes that the parties have agreed to arbitrate. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995).   When determining the scope of an arbitration provision, the Court looks to the factual allegations of the complaint and determines whether the claims alleged therein touch and concern matters covered by the arbitration provisions.   *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 622 n.9 and n.13 (1985).   In addition, "ambiguities as to the scope of the arbitration clause itself [is] resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

The party opposing arbitration "has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration," which is a burden "not unlike that of a party seeking summary judgment." *Aronson v. Dean Witter Reynolds, Inc.*, 675 F.Supp. 1324, 1325 (S.D. Fla. 1987); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26-27 (1991) (the burden is on the party opposing arbitration to prove to the court that arbitration is improper).   Accordingly, Hadden bears the burden here of showing cause why his claims should not be referred to arbitration.

Although the FAA governs the applicability of arbitration agreements, state law governs issues "concerning the validity, revocability, and enforceability of contracts

generally." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).   Therefore, defenses

such as fraud, unconscionability, and duress are governed by state law.   *See Dale v.*

*Comcast*, 498 F.3d 1216, 1219 (11th Cir. 2007).   Florida law applies here, since the

agreement to arbitrate was executed in Florida, Hadden's claims arose in Florida, and

the agreement states "venue for any proceeding relating to arbitration of claims shall

be in the county wherein the institution is located," which is in Florida.   *See*

*Williams v. Eddie Acardi Motor Co.*, No. 07-cv-782-J-32JRK, 2008 WL 686222, at *4

(M.D. Fla. March 10, 2008).

## Discussion

After considering the evidence presented at the evidentiary hearing, the Court

finds, as a matter of fact, that on July 23, 2013, Hadden signed an agreement entitled

University Enrollment Policies and Procedures, which included an arbitration

provision.   *See* DE 79-1.   In relevant part, the arbitration provision states as follows:

> It is agreed that, in the event the parties to this enrollment
> agreement are unable to amicably resolve *any dispute, claim, or*
> *controversy arising out of or relating to this agreement, or if a*
> *claim is made by either against the other* or any agent or affiliate
> of the other, the dispute, claim, or controversy *shall be resolved*
> *by binding arbitration* administered by the American Arbitration
> Association under it[s] Commercial Arbitration Rules.

DE 79-1 at 1 (emphasis added).

The Court rejects Hadden's contention that he "was never personally provided

an Arbitration Agreement by [Keiser] or . . . was informed or knowingly signed an

Arbitration Agreement with Defendant involving Plaintiff's enrollment at Defendant's

College."   The Court also rejects Hadden's challenge to " the authenticity of" the

University Enrollment Policies and Procedures cited above (DE 79-1) and relied upon by Keiser. Lastly, the Court rejects Hadden's contention that even if the Court finds that Hadden is bound by the arbitration provision, the provision "is limited to Defendant's Enrollment Policies and class tuition fees when due," and that "Plaintiff's three intentional tort claims and fraudulent debt collection alleged against [Keiser] is outside the scope of" the arbitration clause.   DE 84 at 1-2.

       The Court reaches these conclusions based upon its evaluation of the credibility of the testimony and documentary evidence presented at the hearing conducted on December 21, 2020.   Keiser presented three exhibits and one witness, Mr. Michael Paolantonio ("Paolantonio"), Hadden's Admission Advisor in 2013 (and now a Senior Admission Counselor with Keiser) (whose affidavit is attached to Keiser's reply).   One of the exhibits is the Enrollment Policies and Procedures contract which shows two signatures.   *See* DE 79-1.   Hadden did not present any exhibit and testified under oath as his only witness.

       Hadden claims that he "was never personally provided an Arbitration Agreement by [Keiser] or personally was informed or knowingly signed an Arbitration Agreement with Defendant."   He further asserts that the signature purporting to be his is fraudulent.

       Paolantonio testified, consistent with the statements made in his Affidavit, that he was the Admissions Counselor for Hadden when Hadden enrolled in Keiser in 2013.   He further testified that it was his pattern of practice to follow the following procedures as it relates to the execution of the Enrollment Policies and Procedures

contract:

In 2013, as part of the enrollment process, a prospective student had an in-person interview with an admissions counselor.   The student and admissions counselor would be in the same admissions room and were either next to or across from each other.

During this interview the admissions counselor would review the Enrollment Policies and Procedures with the prospective student.   Once the student read the document and consented to its terms, the student was asked to sign, and then Paolantonio would sign after the student, indicating the student was accepted to the university.   Paolantonio testified that Hadden would not have been able to matriculate at Keiser had he not executed the Enrollment Policies and Procedures form.   It is undisputed that Hadden matriculated into, and graduated from, Keiser University.   SAC ¶ 34.

Paolantonio testified that he presented the Enrollment Policies and Procedures to Hadden, that Hadden had the opportunity to read the document, and that Hadden signed the document (marked as Exhibit 1 at the hearing, in the file at DE 79-1).   To the best of his recollection, during the 12 years of his employment with Keiser, there was never a time when Paolantonio signed an Enrollment Policies and Procedures form before the student signed.   So, on the Enrollment Policies and Procedures form which shows Paolantonio's signature and the applicant's signature, Paolantonio is absolutely sure that Hadden signed the form before he did.

Hadden testified at the evidentiary hearing that he never met Paolantonio, that the Enrollment Policies and Procedures form was never presented to him, and that he was never informed about an arbitration clause.   Hadden further testified that the signature on the Enrollment Policies and Procedures form is not his.   Hadden did admit, however, that he signed documents on "several" occasions.   To the best of his recollection, these documents related to "loans and so forth," and "with the enrollment related to what I was told," but he does not remember exactly what those documents were.

Hadden admits that he enrolled and attended Keiser, and that he signed documents in connection with his enrollment.   He does not, however, recall what documents he signed.   The Court finds the preponderance of the evidence supports the conclusion that it was the standard practice and procedure of the school to require that the University Enrollment Policies and Procedures form (Exhibit 1) be signed before any student could attend Keiser, and there's no justifiable reason to conclude that the standard practice and procedure was not followed in this case. The Court rejects Hadden's assertion that the school fraudulently created the documents presented during the hearing to perpetrate a fraud on the Court. Accordingly, the Court concludes that Hadden entered into a binding agreement to arbitrate which he cannot avoid.

The Court also rejects Hadden's final assertion, that he has raised claims that are not encompassed within the arbitration clause.   Hadden's claims fall squarely

within the broad scope of the arbitration clause which encompasses "*any dispute, claim, or controversy arising out of or relating to this agreement, or if a claim is made by either against the other. . .*".   There is no question that all of Hadden's allegations are related to a dispute over the validity of one or more of Hadden's student loans, its repayment terms, or actions allegedly taken by Defendants in collecting that debt.   These claims are made by Hadden against Keiser and the other Defendants and are thus are subject to arbitration.   Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant Everglades College d/b/a Keiser University's Motion to Dismiss and Compel Arbitration [DE 79] is GRANTED and Keiser and Hadden are ordered to arbitrate this dispute.   Defendant Everglades College d/b/a Keiser University's Motion to Extend Deadlines in Scheduling Order [DE 91] is denied as moot, and Defendant Everglades College d/b/a Keiser University's Request for Judicial Notice of Plaintiff's Second Amended Complaint [DE 98] is denied.   This case as to Defendant Everglades College d/b/a Keiser University is STAYED pending completion of the arbitration.   The Court will retain jurisdiction to enforce whatever arbitration decision is rendered by the arbitrator. The case shall proceed in this Court as to the other parties.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 31st day of December, 2020.

KENNETH A. MARRA
United States District Judge